IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DONALD VAUGHN, #368-231,

    Plaintiff,

v.

WARDEN DENISE A. GELSINGER,
CO II B. RENNER,
CO II A. HUTZLER,
CO II R. STRAWDERMAN,
ROXBURY CORRECTIONAL
    INSTITUTION,
WAYNE HILL,
T. A. WILLIAMS,

    Defendants.

Civil Action No.: CCB-19-183

## MEMORANDUM

Defendants Roxbury Correctional Institution, Gelsinger, Renner, Hutzler, Hill, and Williams[1] filed a motion to dismiss or for summary judgment in response to the above-entitled civil rights complaint filed by plaintiff Donald Vaughn. ECF 17. Vaughn opposes the motion.[2] ECF 21. The court finds a hearing unnecessary for the determination of the matters currently pending. *See* Local Rule 105.6 (D. Md. 2018). For the following reasons, the defendants' motion, construed as one for summary judgment, shall be granted.

---

[1] Service of process was not accepted on behalf of defendant C.O. II R. Strawderman because he resigned from correctional service on October 12, 2018. *See* ECF 17-2 at 1, n. 3. For reasons apparent herein, the complaint shall be dismissed as to Strawderman without requiring his response.

[2] Vaughn filed two motions for extension of time (ECF 19 & 20) which shall be granted *nunc pro tunc*.

## I. Background

Complaint Allegations:

At all times relevant to the instant complaint, Vaughn was incarcerated at Roxbury Correctional Institution ("RCI").[3] His supplemental complaint[4] is made under oath and details the following factual allegations. On February 2, 2018, at approximately 4:20 p.m., Vaughn returned to housing unit number three after dinner, which required him to pass through a metal detector. ECF 6 at 2. Officer Horstall was stationed there to observe inmates walking through the metal detector and stopped Vaughn, stating that he did not "clear the metal detector." *Id.* Vaughn explains that he tried to clear it twice, but could not do so because the front door was open and air was blowing through the entrance. *Id.* After the second attempt, Vaughn raised his hands in the air and told Horstall, "look you see me cleared it so don't fucking start this shit, how do you fucking want me to clear it[?]" *Id.*

Following Vaughn's statement, Horstall directed Vaughn to turn around, conducted a "quick search for any contraband," checked Vaughn's inmate identification card, and placed Vaughn in handcuffs. ECF 6 at 3. Horstall then escorted Vaughn to the recreation hall on the bottom tier of housing unit three, and "called to shut the door." *Id.* While Vaughn remained handcuffed in the recreation hall, all other inmates returning to housing unit three were placed back in their cells, a count was conducted, mail was distributed, and inmates working sanitation were released for their jobs. *Id.*

Officer B. Renner, the officer in charge of housing unit three, gave a directive for the recreation hall door to be opened and motioned for Vaughn to come over to him. ECF 6 at 3.

---

[3] Vaughn is currently confined at Western Correctional Institution in Cumberland, Maryland.

[4] This court granted Vaughn 28 days to file a supplemental complaint because his complaint did not include the facts surrounding the alleged assault or a description of his injury. ECF 3 at 2.

2

Renner told Vaughn to turn around so he could remove the handcuffs. Vaughn complied. *Id.* Renner then asked Vaughn what was going on, and Vaughn replied that Horstall placed him in handcuffs because he was being disrespectful and could not clear the metal detector. *Id.* Renner then informed Vaughn he was "moving him off the honor tier" because Horstall did not want Vaughn there anymore. *Id.* Vaughn protested and asked why he would be moved if he did not do anything and had not violated any rules. *Id.* Renner began to walk away, telling Vaughn he was being moved to another tier without receiving an infraction because Renner did not feel like doing any paperwork. *Id.*

According to Vaughn, as Renner was walking away to return to "the bubble," Vaughn "place[d] [his] hand on the cage around the stairway around the steps in the direction of B. Renner." ECF 6 at 3. Renner "quickly moved" and "responded with several strikes" to Vaughn's head and facial area. *Id.* Vaughn states that he responded by grabbing Renner to stop him from assaulting Vaughn further; the two of them then began wrestling. *Id.*

Officers Hutzler and Strawderman, along with "other correctional officers" who Vaughn is unable to name, came to Renner's aid. ECF 6 at 4. Vaughn states there was "no code called over the radio for assistants [sic] needed at housing unit #3 for a[n] assault or battery on a staff member." *Id.* Vaughn further states that he "was placed back in handcuffs and drag[g]ed up to medical by other officer [sic] that was in the area." *Id.* He was then strip-searched and sent to the nurse. *Id.*

Vaughn could not open his right eye, his "back was hurting," and his right ankle was injured. ECF 6 at 4. The nurse checked his vital signs, started an I.V., and gave Vaughn water to drink. *Id.* A decision was made to transfer Vaughn to the hospital for a CT scan of the right side of his face. *Id.* He was transported to the hospital by ambulance. *Id.* A correctional officer, who

3

Vaughn does not name, accompanied him to the hospital. *Id.* After Vaughn received the CT scan and was waiting for the results, the correctional officer said to Vaughn, "what happens at the jail keep it at the jail, right?" *Id.* When a male nurse came into the room and asked Vaughn what occurred, before he could answer, the correctional officer said Vaughn "fell down the step and fell on a cart with a lock on it." *Id.*

Vaughn asserts that the assault committed by the correctional officers constitutes an Eighth Amendment violation and claims the correctional officers at RCI engage in such conduct frequently. ECF 6 at 4. He claims RCI officers also intentionally destroy personal property[5] belonging to inmates and smuggle tobacco into the prison. *Id.* As relief, he seeks a declaratory judgment stating the acts and omissions described violate Vaughn's constitutional rights; a preliminary and permanent injunction requiring the named defendants to "stop illegally confiscating personal property and violating the United States laws and using excessive force"; compensatory damages of $50,000 from each defendant; and punitive damages of $5,000 from each defendant. ECF 6 at 6.

Defendants' Response

In his declaration, Renner does not address Vaughn's description of their interaction prior to the use of force; rather he states he was "attempting to move inmate Donald Vaughn . . . from Cell #3-B-18B to C-Wing" when Vaughn became "verbally combative." ECF 17-5 ¶ 3. He claims that Vaughn stated, "No, I'm not moving to C-Tier, just lock me the fuck up!" *Id.* Renner further states that after he gave Vaughn a "direct order to move," Vaughn continued to insist that Renner send him to the disciplinary segregation unit. *Id.* Renner gave Vaughn an order to turn around to be handcuffed and in response, Vaughn swung his right fist at Renner. *Id.* Renner avoided the

---

[5] Vaughn states that his personal property was confiscated by Officer T.A. Williams. ECF 6-1 at 1–2. He attaches as exhibits personal property inventory forms. ECF 6-2; ECF 6-5.

4

punch and, in response, delivered "several strikes to his head and facial area." *Id.* Vaughn then put Renner in a "headlock," took him down to the floor, and "began wrestling with [him]." *Id.* Officers Hutzler and Strawderman responded to the area to assist Renner. *Id.* Vaughn "struck Strawderman several times before Hutzler and Strawderman could handcuff him." *Id.* Renner states he suffered injuries to both hands and wrists during the incident. *Id.*

Hutzler's declaration indicates that he responded to the area when he heard a loud noise coming from the lobby of housing unit three. ECF 17-7 ¶ 3. When he arrived on the scene, Hutzler observed Vaughn with his arm around Renner's neck, and saw that Strawderman was already there attempting to render assistance. *Id.* Hutzler gave loud verbal commands for Vaughn to stop resisting and allow the officers to handcuff him, to no avail. *Id.* In light of his refusal to cooperate, Hutzler "deliver[ed] knee strikes to the right side of inmate Vaughn's torso, while attempting to gain control of his right arm." *Id.* Hutzler states that Vaughn continued to resist and Hutzler continued to deliver knee strikes to Vaughn's torso as he issued loud commands. *Id.* This continued until Vaughn complied with the orders and placed his hands behind his back, at which point he was handcuffed and assisted to his feet. *Id.* Vaughn was then escorted from the building by Officers Reynolds and Christman. *Id.* Neither Renner nor Hutzler elected to pursue criminal charges against Vaughn. ECF 17-15 at 2 (Internal Investigation Unit Report).

A Use of Force and Serious Incident Report was prepared by Chief of Security Todd K. Faith. ECF 17-6. Beyond the narrative provided by Renner and Hutzler, the report indicates that during Vaughn's escort to medical with Officers Reynolds and Christman, Vaughn "intentially (sic) fell to the ground several times . . . requiring the officers to force him back to his feet." *Id.* at 3. The investigating officer interviewed Vaughn at the dispensary shortly after the incident; Vaughn admitted taking a swing at Renner because he was being moved off the tier, but declined

to write a statement. *Id.* The investigating officer found that the use of force was an appropriate response and was utilized for self-defense. *Id.* at 1, 3, 5, 10, 12, 14. Pictures of Vaughn taken following the incident confirm his right eye was swollen shut. *Id.* at 27–29.

Following the incident, Renner issued Vaughn an infraction charging him with violation of inmate rules 101 (assault or battery on staff), 400 (disobeying a direct lawful order) and 405 (any exhibition, demonstration or conveyance of insolence, disrespect, or vulgar language). ECF 17-5 ¶ 4. An adjustment hearing was held on March 2, 2018, at Western Correctional Institution. ECF 17-10 at 2. Vaughn pleaded guilty to all rule violations charged pursuant to an agreement made with the "Facility." *Id.* at 3. He received a segregation sentence of 180 days, revocation of 120 good conduct credits, and six months suspension of visitation. *Id.* at 3, 5.

Vaughn appealed the adjustment hearing officer's decision to the Warden. ECF 17-10 at 6. In his appeal, Vaughn stated that his adjustment history, prior to the incident with Renner, was in the "good" category, but he was told prior to the hearing that the Warden had changed his adjustment history to "poor" because of "an act of violence." *Id.* Vaughn argues that the act of violence was actually visited upon him, as evidenced by his injuries. *Id.* He additionally took issue with the length of time he was expected to spend in segregation, arguing that the 180 days imposed should run from the date of the incident. *Id.* at 7. The Warden affirmed the decision without comment. *Id.* at 8.

Vaughn's medical records, included as an exhibit with the defendants' dispositive motion, indicates that he was examined by Gabriela Gilbert, RN, on February 2, 2018, at 5:53 p.m., for injuries sustained in an "altercation with officer." ECF 17-8 at 31. Gilbert sent Vaughn to the emergency room for a possible temporal fracture. *Id.* Upon his return from the hospital, Gilbert

saw Vaughn again and noted that he was laughing about the incident, walked without a limp despite swelling to his ankle, and was in no acute distress. *Id.* at 29.

On February 8, 2018, Vaughn was examined at WCI and it was noted he had sustained a right black eye with bruising below the eye and right eyelid edema. ECF 17-8 at 15, 19. Vaughn told the Nurse Practitioner, Peggy Mahler, that he was not in pain and that he had a facial x-ray before his transfer which was negative for a fracture to his face. *Id.* at 15.

On February 12, 2018, an x-ray of Vaughn's ankle revealed no fracture, dislocation, or subluxation. ECF 17-8 at 14.

## II. Standard of Review

Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a), which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphases in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in

her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)) (internal citation and quotation marks omitted).

Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. This prohibition "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The Eighth Amendment is violated when an inmate is subjected to "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). To establish an Eighth Amendment violation, an inmate must establish both that the prison official subjectively "acted with a sufficiently culpable state of mind" and that the injury or deprivation inflicted was objectively serious enough to constitute a violation. *Williams*, 77 F.3d at 761. On the subjective element, an inmate must show that the guards used force "maliciously or sadistically for the very purpose of causing harm" rather than "in a good faith effort to maintain or restore discipline." *Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (quoting *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986)). In assessing this element, a court should consider "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) any efforts made to temper the severity of a forceful response." *Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008) (quoting *Whitley*, 475 U.S. at 321) (internal quotation marks omitted).

As for the objective level of harm, a party asserting an Eighth Amendment excessive force claim must demonstrate that the officer used a "nontrivial" amount of force. *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010). "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of action." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 9) (internal quotation marks omitted). Although inmates must show the application of nontrivial force, an Eighth Amendment violation can occur even if that force did not cause serious injury. *Id.* at 38 ("An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury."). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." *Hudson*, 503 U.S. at 9. The extent to which injuries are modest is accounted for in the award of damages. *See Wilkins*, 559 U.S. at 40.

## III. Analysis

<u>Defendants Roxbury Correctional Institution, Gelsinger, and Hill</u>

Roxbury Correctional Institution is not a "person" within the meaning of 42 U.S.C. § 1983, which provides, in relevant part:

> "Every *person* who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person with the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured[.]"

42 U.S.C. § 1983 (emphasis added). Further, as a State agency, the Eleventh Amendment to the Constitution provides immunity from suit in federal court brought by its citizens or the citizens of another state, unless it consents. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh

9

Amendment." *Id.* While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity under the Eleventh Amendment to suit in federal court. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Halderman*, 465 U.S. at 99 (emphases in original). The complaint as to Roxbury Correctional Institution will thus be dismissed.

Defendants Denise Gelsinger, the former warden of RCI, and Wayne Hill, Commissioner of Correction, are named by Vaughn as defendants, but are not directly implicated in any of the claims raised. To the extent they are named as defendants simply because they hold or held supervisory roles, the claim fails. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)) ("[T]here is no respondeat superior liability under § 1983."). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Vaughn presents no evidence suggesting Gelsinger or Hill were involved in the alleged assault, nor does he delineate any facts establishing a basis for supervisory liability. The complaint as to Gelsinger and Hill will thus be dismissed.

<u>Defendants Renner, Strawderman, and Hutzler</u> (assault claim)

In his opposition response, Vaughn focuses on the fact that his injuries were far more severe than the injuries reported by the officers involved. ECF 21 at 3. He further posits the question, "how could [he] have assaulted any correctional officer when [he] was still handcuff[ed] by M. Horstall CO II according to his reported facts." *Id.* He claims the handcuffs were not removed until he was at the dispensary being seen by the nurse. *Id.* Vaughn's opposition response contradicts the allegations raised in his complaint, where he admits he was not wearing handcuffs during the encounter with Renner. Vaughn alleged that he: "placed [his] hand on the cage around the stairway around the steps in the direction of . . . Renner," ECF 6 at 3, and responded to Renner by grabbing Renner to stop the assault. Vaughn also admitted the two of them began wrestling, *id.*, and that when the struggle stopped, Vaughn "was placed back in handcuffs and drag[g]ed up to medical by other officer [sic] that was in the area," *id.* at 4.

Normally, credibility determinations may not be made in the context of a summary judgment motion. *See Gray v. Spillman*, 925 F.2d 90, 95 (4th Cir. 1991). Where, however "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *See Scott v. Harris*, 550 U.S. 372, 380 (2007). Here, the contradiction lies in Vaughn's own version of the facts as stated in his verified complaint and his verified opposition response. Both versions cannot be true. Further, Vaughn has repeatedly admitted, in his numerous administrative complaints regarding his property, that he

assaulted the officers involved. *See* ECF 17-18 at 10 ("on 2-2-18 I assaulted a[n] officer); 24 ("February 2, 2018 I committed the following rule violation 101, 400, 405"); 35 ("I assaulted the acting Sgt or OYC cause when I was trying to talk to him he walked away from me"); 36 ("I assaulted a[n] officer"); 40 ("On 2-3-2018 I was transfer [sic] out from RCI to WCI [be]cause I assaulted a staff member on 2-2-2018").

The undisputed facts in this case are that Vaughn initiated a violent attack on Renner and Renner as well as the officers who came to assist him responded in kind in an effort to protect Renner's safety and to restore discipline in the prison. Eighth Amendment analysis does not require an estimation of which party suffered the more grievous injury during an affray. Rather, the examination is focused on the need for force and whether it was applied maliciously or sadistically. Here, there is no evidence, and Vaughn does not allege, that the use of force continued after Vaughn decided to cooperate with the officers' effort to handcuff him and move him to another housing unit. The use of force was accordingly tempered to restore order and gain Vaughn's compliance with lawful orders. Defendants are entitled to summary judgment in their favor.

Defendant Williams (due process claim)

To the extent Vaughn raises a claim that his personal property was wrongfully confiscated by Officer Travis Williams, *see* ECF 6-1 at 1–2, he has failed to state a constitutional claim. In the case of lost or stolen property, sufficient due process is afforded to a prisoner if he has access to an adequate post-deprivation remedy. *See Parratt v. Taylor*, 451 U.S. 527, 540 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). The right to seek damages and injunctive relief in Maryland courts constitutes an adequate post deprivation remedy.

See *Juncker v. Tinney*, 549 F. Supp. 574, 579 (D. Md. 1982).[6] Moreover, the Supreme Court extended its *Parratt* holding to intentional deprivations of property. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Therefore, assuming Vaughn's personal property was destroyed as he alleges, such a claim does not rise to a constitutional violation.[7]

## IV. Conclusion

For the reasons stated herein, defendants' motion to dismiss or for summary judgment, construed as a motion for summary judgment, shall be granted as to all claims raised.

A separate order follows.

___11/26/19___
Date

___[signature]___
Catherine C. Blake
United States District Judge

---

[6] Although *Juncker* dealt with personal injury rather than property loss, its analysis and conclusion that sufficient due process is afforded through post deprivation remedies available in the Maryland courts also applies to cases of lost or stolen property, given *Juncker's* reliance on *Parratt* in dismissing plaintiff's due process claim.

[7] In rejecting a prisoner's Fourth Amendment claim to an expectation of privacy in his cell, the Supreme Court stated that denying such a claim did not "mean that [a prisoner] is without a remedy for calculated harassment unrelated to prison needs. Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity. The Eighth Amendment always stands as a protection against 'cruel and unusual punishments.' By the same token, there are adequate state tort and common-law remedies available to respondent to redress the alleged destruction of his personal property." *Hudson*, 486 U.S. at 530–31.

13